J-S55018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF G.T.D.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.A.D.G., BIRTH MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1369 EDA 2018 |

Appeal from the Decree Entered April 9, 2018
In the Court of Common Pleas of Montgomery County
Orphans' Court at No: 2018-A0045

BEFORE: OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED SEPTEMBER 18, 2018**

A.A.D.G. ("Mother") appeals from the decree entered April 9, 2018, in the Court of Common Pleas of Montgomery County, which confirmed her consent to adoption and terminated her parental rights to her son, G.T.D.G. ("Child"), born in November 2017.[1] We affirm.

Child was born in November 2017 and immediately placed into respite foster care. Mother executed a consent to adoption on December 19, 2017. On March 5, 2018, Mother informed the agency, Haven Adoptions ("Haven") that she intended to revoke her consent. Mother sent a letter to the court on

---

[1] J.D.G. ("Father"), the husband of Mother, executed a consent to the adoption on January 19, 2018. Trial Court Opinion ("TCO"), 5/11/18, at 1. The trial court confirmed his consent on April 9, 2018. Notes of Testimony (N.T.), 4/9/18, at 53-54. Father has not filed a separate appeal and is not party to the instant appeal.

March 8, 2018,[2] indicating the same, and requesting that counsel be appointed to represent her. On March 8, 2018, Haven filed petitions to confirm the consents of both parents. On March 15, 2018, Haven filed a petition seeking the involuntary termination of parental rights of an additional putative birth father, namely, paternal grandfather/father-in-law ("father-in-law") after Mother asserted he might be the father of Child.[3]

The court convened a confirmation hearing on April 9, 2018. Mother was represented by counsel and testified on her own behalf. Child was represented by legal counsel.[4] At the conclusion of the hearing, the court confirmed Mother's consent. Mother timely filed a notice of appeal and concise statement of errors complained of on appeal on May 2, 2018.

Mother now raises the following claim for our review.

> 1.) Whether [the trial court] abused its discretion in not allowing [Mother] to revoke her [c]onsent, which was executed more than thirty (30) days prior to her request, but which Mother stated was executed under duress?

Mother's Brief at 4.

___

[2] This letter does not appear in the certified record; however, the trial court opinion indicates that it received such a letter on March 8, 2018, and that the letter also indicated Mother was aware that she was past the revocation period when she submitted her letter. *See* TCO at 3-4.

[3] The petition was granted by final decree and father-in-law's parental rights were terminated April 10, 2018. TCO at 4. Mother does not challenge this determination. Father-in-law is not a party to the instant appeal, and he has not filed a separate appeal.

[4] Child's counsel has filed a brief in this Court, arguing that Mother's revocation was not timely filed and the trial court properly did not consider duress.

Mother argues that she only executed the consent as a result of fear and the influence of Father and his family over her. Mother's Brief at 7. Mother contends that where the duress was continuing, it was impossible for her to revoke her consent within the statutory time period. *Id.* at 8-9.

This Court has explained,

the interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary.

*In re Adoption of J.A.S.*, 939 A.2d 403, 405 (Pa. Super. 2007) (internal citations and quotations omitted).

A parent may relinquish her parental rights to an agency with written notice and court approval. *See* 23 Pa.C.S.A. § 2501, 2504. "A party seeking to disturb a termination decree must show that the consent given to terminate parental rights was not intelligent, voluntary and deliberate." *In re M.L.O.*, 416 A.2d 88, 90 (Pa. 1980).

Section 2711 of the Adoption Act lays out the requirements for consents and the procedure and timeframes for the revocation of a voluntary consent to adoption. *See* 23 Pa.C.S.A. § 2711. "Section 2711(c) unequivocally states that '[a] consent to an adoption may only be revoked as set forth in this subsection,' and 'the revocation of a consent shall be in writing and shall be served upon the agency or adult to whom the child was relinquished.'" *In re R.I.*, 173 A.3d 665, 667 (Pa. Super. 2017); *see also* 23 Pa.C.S.A. § 2711(c). For consents executed by the birth mother, the consent is irrevocable more

than thirty days after the execution of the consent. *Id.* at 667; *see also* 23 Pa.C.S.A. § 2711(c)(1)(ii). An individual may not waive the revocation period. *See* 23 Pa.C.S.A. § 2711(c)(2).

An individual may challenge the validity of the consent only by filing a petition alleging fraud or duress within the earlier of the following time frames:

> (A) Sixty days after the birth of the child or the execution of the consent, whichever occurs later.

> (B) Thirty days after the entry of the adoption decree.

*See* 23 Pa.C.S.A. § 2711(c)(3)(i). Here, subsection (c)(3)(i)(A) applies, and the later of those two dates was sixty days after the execution of the consent.

Our Court has held that the statute prescribes both the timeline for revocation of consent to adoption as well as challenges to the validity of the consent on grounds of fraud or duress. *See J.A.S.*, 939 A.2d at 407-08. The statute is written in such a way as to afford finality to the adoption process, and trial courts may not consider untimely attempts to revoke consent. *Id.* In the instant case, the trial court concluded that regardless of Mother's arguments that she had executed her consent under duress, her revocation was untimely. TCO at 3-6.

Our review of the record reveals the following. At the time of Child's birth, Mother asked hospital staff about adoption options, stating that her husband and family did not know of the pregnancy and she could not bring Child home. N.T., 4/9/18, at 12-13. She stated she was safe in her home but could not care for Child financially. *Id.* at 14-15. Kayla Mazzotta, a

caseworker employed by Haven, informed Mother that Child could not be adopted without Father's consent. *Id.* at 14. Child was discharged from the hospital to a respite foster home. *Id.*

On December 19, 2017, Mother executed a consent to adoption and affidavit of paternal identity in Haven's offices before two witnesses, identifying Father as Child's birth father. *Id.* at 16-17. Ms. Mazzotta opined that Mother did not appear to be under stress or duress, and was advised of her right to revoke her consent and the appropriate time frames in which to do so, and in which to raise claims of fraud and duress. *Id.* at 16, 40. During the thirty-day period to revoke consent, Haven reached out to Mother three times a week, and she remained confident in her choice to place Child for adoption. *Id.* at 26. Father executed his own consent to adoption on January 17, 2018; he did not appear to be putting any pressure on Mother and stated he had only recently discovered Child's birth. *Id.* at 19-21, 30-31.

On February 16, 2018, Mother advised employees at Haven that her father-in-law had repeatedly sexually assaulted her over the course of two years. *Id.* at 20-23, 31-32. Mother executed an additional affidavit of parental identity, indicating father-in-law as a putative father. *Id.* at 23. At the hearing, Mother testified that father-in-law had sexually assaulted her and she believed he was the father of Child. *Id.* at 40-41. Mother testified that when she signed the consents, she did not tell Father about the assaults because she was afraid. *Id.* at 42. Mother wanted to parent her son but did not feel able to while living near father-in-law, who told her she needed to

"handle the problem." *Id.* at 42-48. Mother loves Child and wishes to care for him now that her marriage has dissolved and she has left the home. *Id.* at 43, 45.

At the conclusion of the hearing, the court found that Mother had not revoked her consent within the thirty-day time period provided by law, had not informed any of the caseworkers that she had signed under duress within either thirty or sixty days after executing her consent, and accordingly, by decree dated April 9, 2018, confirmed her consent. *Id.* at 56-57.

The record supports the trial court's decision. By either the March 5, 2018 letter to the adoption agency or the March 8, 2018 letter to the court, Mother was beyond the statutory time period for revocation. *See J.A.S.*, 939 A.2d at 407-08; 23 Pa.C.S.A. § 2711(c)(1)(ii); 23 Pa.C.S.A. § 2711(c)(3)(i). Her consent was executed December 19, 2017. Sixty days from that date was February 19, 2018.[5] Mother's letters were thus either fourteen or seventeen days late, and the trial court appropriately concluded her revocation was untimely. Accordingly, we discern no error in the court's confirmation of the consent and voluntary termination of Mother's parental rights and affirm the decree. *J.A.S.*, 939 A.2d at 407-408.

Decree affirmed.

---

[5] The sixty-day date was February 17, 2018, a Saturday. *See* 1 Pa.C.S.A. § 1908 (noting that the computation of time excludes the first and last day of a period, and that when the last day of a period falls on a Saturday, Sunday, or legal holiday, that day may be omitted from computation).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/18/18</u>